162 N.J. Super. 323 (1978)
392 A.2d 1218
WILLIAM CAMBURN, BY HIS GUARDIAN AD LITEM, INEZ McGAYHEY, PLAINTIFF-APPELLANT,
v.
MARLBORO PSYCHIATRIC HOSPITAL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1978.
Decided September 26, 1978.
*325 Before Judges HALPERN, ARD and ANTELL.
Mr. Robert A. Coogan argued the cause for appellant.
Mr. Richard M. Meth, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by HALPERN, P.J.A.D.
This is an appeal from a summary judgment dismissing plaintiff's complaint. The narrow and novel issue presented is whether under the facts in this case defendant (hereinafter referred to as the State) is immune from responsibility under the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 et seq.).
The pertinent operative facts are not in dispute. In September 1973, following a hearing in the Ocean County Court, plaintiff was sent to Marlboro Psychiatric Hospital, on an involuntary psychiatric commitment, because he was found to be a danger to himself and to society. On several occasions following his commitment he escaped or wandered off from the hospital grounds. In November 1973 he again escaped or wandered off, presumably without leaving the hospital grounds, and voluntarily surrendered six days later. Because of his exposure to the cold weather, both *326 his legs were frostbitten and had to be amputated. This suit was instituted by his guardian to recover damages from the State predicated upon the negligence of its agents in failing to exercise reasonable care for his safety.
In granting the State's motion to dismiss the complaint the trial judge relied upon N.J.S.A. 59:6-7, which provides:

59:6-7. ESCAPE OF PERSON CONFINED; INJURIES BETWEEN INMATES
Neither a public entity nor a public employee is liable for:
a. an injury caused by an escaping or escaped person who has been confined for mental illness or drug dependence;
b. an injury caused by any person who has been confined for mental illness or drug dependence upon any other person so confined.
The State recognizes that the statute purports to grant immunity for injuries "caused by an escaping or escaped person who has been confined for mental illness * * *," but argues that the intent of the Legislature was to immunize the State from self-inflicted injuries as well as claims for injuries to all third persons. We disagree.
In construing the provisions of the New Jersey Tort Claims Act we must realistically interpret all the provisions of the act in light of the applicable common law immunities existing theretofore, and to favor the immunity provisions over the liability provisions. See Malloy v. State, 76 N.J. 515 (1978), for a discussion of the history pertaining to the act.
It is obvious from an examination of the entire act that the Legislature, with great care, designated in what instances immunity was to be given to public entities. In N.J.S.A. 59:6-7 it specifically dealt with persons confined for mental illnesses and immunized the public entity and its employees for injuries "caused by" an escaped patient. We deem it highly significant that immunity was not expressly given for self-inflicted injuries when such could easily have been done.
*327 The legislature distinguished between escaping persons confined in public institutions for mental illness and escaping criminals confined to jails. In N.J.S.A. 59:5-2 it provided:

59:5-2.[1] PAROLE OR ESCAPE OF PRISONER; INJURIES BETWEEN PRISONERS
Neither a public entity nor a public employee is liable for:
a. An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release.
b. any injury caused by:
(1) an escaping or escaped prisoner;
(2) an escaping or escaped person; or
(3) a person resisting arrest; or
(4) a prisoner to any other prisoner.
We would be myopic not to see that the Legislature realized that a person confined for a mental illness had to be protected against his own irresponsible acts, whereas the same was not true of a confined, but mentally competent, criminal. The legislative concern in both instances was not to extend governmental liability "beyond reasonable limits." Absent a specific immunization for self-inflicted injuries under N.J.S.A. 59:6-7, no immunity exists.
*328 If, as we hold herein, the State was under a legal duty to exercise reasonable care for the safety and protection of plaintiff as the nature of his known illness and propensities required, then plaintiff may recover from the State if he is able to prove that its negligence started in motion a sequence of events which could reasonably have been foreseen. That such right to sue the State exists is set forth in N.J.S.A. 59:2-2:

59:2-2. LIABILITY OF PUBLIC ENTITY
a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.
For cases in other jurisdictions which have held public hospitals and institutions liable for negligence resulting in injuries to patients, see Milton v. State, 293 So.2d 645 (La. App. 1974); Eaby v. United States, 298 F. Supp. 959 (D.D.C. 1969); Callahan v. State, 179 Misc. 781, 40 N.Y.S. 2d 109 (Ct. Cl. 1943), aff'd 266 App. Div. 1054, 46 N.Y.S.2d 104 (App. Div. 1943); Shattuck v. State, 166 Misc. 271, 2 N.Y.S.2d 353 (Ct. Ct. 1938), aff'd 254 App. Div. 926, 5 N.Y.S.2d 812 (App. Div. 1938). See also, 40 Am.Jur.2d, Hospitals and Asylums, § 33 at 875; Annotation, "Liability of hospital or sanitarium for injury or death of patient as result of his escape or attempted escape," 70 A.L.R.2d 347 (1960).
Finally, our review of this meager record convinces us that in view of the important and novel issues outlined herein, the record was wholly inadequate for a decision on the merits by the summary judgment route. Anderson v. Sills, 56 N.J. 210, 215 (1970); Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142 (1969).
Reversed and remanded for a plenary trial.
NOTES
[1] The comment by the Legislature to this section states:

Subsection (a) involves a particular type of discretionary activity which should not be subject to threat of tort liability.
Subsection (b) reflects the judgment that governmental liability should not be extended beyond reasonable limits.
Subsection b(4) also recognizes the practical problems inherent in supervising prisoners and particularly in preventing injuries caused by one prisoner upon another. While it is necessary to provide supervision, the decision to do so for the purpose of preventing inter-prisoner injuries should not be threatened with tort liability nor should the actions of prison guards in reacting to situations which may give rise to such injuries. Thus, this provision (as it relates to injuries to another prisoner) specifically rejects the reasoning of the Appellate Division in Harris v. State, 118 N.J. Super. 384 (1972).